NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos: 20-1802 and 20-3530
_____

MIRNA LUZ CRUZ-DIAZ,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA 1: A209-220-377)
Immigration Judge: John B. Carle
_____

Submitted Under Third Circuit LAR 34.1(a)
September 20, 2021

Before:   JORDAN, PORTER, and RENDELL, *Circuit Judges*

(Filed: December 21, 2021)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Mirna Luz Cruz-Diaz, a native and citizen of El Salvador, applied for asylum,

withholding of removal, and protection under the Convention Against Torture ("CAT").

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

The Immigration Judge ("IJ") denied her application, and the Board of Immigration Appeals ("BIA") dismissed her appeal of that denial. Cruz-Diaz's motion to reopen her asylum case, claiming ineffective assistance of counsel, was also denied by the BIA. She has filed two petitions seeking review of those BIA decisions. For the following reasons, we will deny the petitions.

## I.    BACKGROUND

Cruz-Diaz entered the United States in June 2016, without being admitted or paroled. In August 2016, the Department of Homeland Security initiated removal proceedings against her. Cruz-Diaz then applied for asylum, withholding of removal, and protection under the CAT. She was initially represented in her removal proceedings by attorney Douglas Grannan. At the final merits hearing, however, Cruz-Diaz was represented by Arkadiy Rafailov, another attorney from Grannan's law firm.

At that merits hearing, Rafailov argued that Cruz-Diaz was eligible for asylum because she had been persecuted in El Salvador on account of her membership in a particular social group ("PSG") that Rafailov defined as "El Salvadoran female victims of sexual assault and/or rape who are unable to report the crimes to police[.]" (20-3530 AR at 214.) In furtherance of that argument, Cruz-Diaz testified that she left El Salvador because a gang member known as "Marlin" had been threatening to harm her and her family if she did not agree to have sexual relations with him. Eventually, he attacked her as she was walking to her employer's home, but her employer was able to thwart the attack. Still, Marlin's threats against her family continued. She testified that she did not

2

contact the police because she feared that Marlin would find out and the police would not help anyway.

Although the IJ found Cruz-Diaz to be a credible witness, he denied her application for asylum and withholding of removal. The IJ concluded that her proposed PSG was not legally cognizable because it was partly defined by the harm it sought to protect her from. The IJ also determined that Cruz-Diaz's harm had resulted from Marlin's personal, criminal motivations and not from Cruz-Diaz's membership in any cognizable PSG. The IJ likewise rejected the application for protection under the CAT, because Cruz-Diaz had not shown that she was likely to be tortured in El Salvador. She timely appealed the IJ's decision to the BIA.

Before Cruz-Diaz's appeal was briefed, Grannan was suspended by the Pennsylvania state bar. He informed the BIA of the suspension and moved to withdraw his appearance in Cruz-Diaz's case. He was later disbarred, with his consent.

Cruz-Diaz retained new counsel, who pursued her appeal of the IJ's denial of her application for asylum and withholding of removal. No challenge was made to the IJ's CAT ruling. On appeal, Cruz-Diaz conceded that the originally proposed PSG was defective, but she asked the BIA to instead consider a different PSG: "Women from El Salvador." (20-3530 AR at 69-70.) The BIA dismissed the appeal, holding that Cruz-Diaz had the burden to define the alleged PSG before the IJ and that the amended PSG definition could not properly be considered on appeal. Cruz-Diaz then filed a petition for review of the BIA's dismissal.

3

Later, Cruz-Diaz filed a motion with the BIA to reopen her removal proceedings. She contended that she had received ineffective assistance of counsel, due to her former counsel's decision to assert a defectively defined PSG. The BIA rejected her argument, concluding that she had not established that her former counsel's performance was ineffective, that she had not satisfied all the procedural requirements to raise a claim of ineffective assistance of counsel, and that she did not suffer prejudice from the alleged ineffectiveness. Cruz-Diaz then filed a petition for review of the BIA's denial of her motion to reopen, and that petition was consolidated with her merits petition. We now consider them both.

## II.    DISCUSSION[1]

### A.    The BIA did not err in dismissing Cruz-Diaz's appeal.

Cruz-Diaz concedes that the PSG she presented to the IJ was defective, and she does not contend that the BIA erred in agreeing with the IJ's legal conclusion regarding that PSG. Instead, she argues that the BIA erred in refusing to consider the cognizability of a different PSG and in ruling that it was "inappropriate to raise a new [PSG] for the first time on appeal." (20-3530 AR at 61.) "While we review for substantial evidence the BIA's factual findings, we review the BIA's legal determinations de novo, including both pure questions of law and applications of law to undisputed facts." *Herrera-Reyes*

---

[1] The BIA had jurisdiction over Cruz-Diaz's appeal of the IJ's determination pursuant to 8 U.S.C. § 1103 and 8 C.F.R. § 1003.1(b). The BIA had jurisdiction over Cruz-Diaz's motion to reopen under 8 C.F.R. § 1003.2(c). We have jurisdiction pursuant to 8 U.S.C. § 1252. *Calderon-Rosas v. Att'y Gen.*, 957 F.3d 378, 387 n.5 (3d Cir. 2020).

4

*v. Att'y Gen.*, 952 F.3d 101, 106 (3d Cir. 2020) (internal quotation marks and citations omitted).

Determining whether a PSG is cognizable often requires fact-finding, which falls within the exclusive province of the IJ. "[T]he existence of a cognizable [PSG] presents a mixed question of law and fact, since the ultimate legal question of cognizability depends on underlying factual questions concerning the group and the society of which it is a part." *S.E.R.L. v. Att'y Gen.* 894 F.3d 535, 543 (3d Cir. 2018). The BIA may not engage in fact-finding. 8 C.F.R. § 1003.1(d)(3)(iv). Instead, it is the IJ who conducts the fact-finding that will form the basis for determining the cognizability of a PSG. *See Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. 189, 191 (BIA 2018) ("Where, as here, an applicant delineates a social group for the first time on appeal, the [IJ] will not have had an opportunity to make relevant factual findings, which [the BIA] cannot do in the first instance on appeal.").

Cruz-Diaz argues that the BIA could have nonetheless determined the cognizability of the new PSG because "the evidence contained in the record and the testimony presented by [Cruz-Diaz] to the [IJ] should have been sufficient[.]" (Opening Br. at 15.) According to Cruz-Diaz, because the originally proposed PSG ("El Salvadoran females who are victims of sexual assault and/or rape who are unable to report the crimes to the police") is a subset of the newly proposed PSG ("women from El Salvador"), the IJ's factual findings as to the more specific group should be sufficient to analyze the more general group. (Opening Br. at 15.)

5

That argument overlooks the context-specific nature of a PSG determination. "[T]he [PSG] determination depends on the facts of the case at hand" and must be determined "on a case-by-case basis." *S.E.R.L.*, 894 F.3d at 555 (internal citations omitted). Cruz-Diaz's argument effectively asks the BIA to consider a different case based on a different PSG. The first proposed PSG and the second one cannot rightly be treated as identical. The IJ focused on making findings of fact relating to whether "El Salvadoran females who are victims of sexual assault and/or rape who are unable to report the crimes to the police" comprise a cognizable PSG, addressing the statements of Salvadoran women who have reported incidents of violence or abuse but have received no help from the police. He did not engage in fact-finding regarding the conditions and circumstances of all "women from El Salvador," nor did he have a chance to consider whether that very broadly defined group could rightly be called "particular." Because no factual record or accompanying analysis had been developed to support Cruz-Diaz's arguments about the new PSG, and because the BIA is not permitted to engage in fact-finding on appeal, *see W-Y-C-*, 27 I. & N. Dec. at 191, the BIA did not err in refusing to consider Cruz-Diaz's new PSG. *See Cantarero-Lagos v. Att'y Gen.*, 924 F.3d 145, 151 (5th Cir. 2019) (reviewing *W-Y-C-* and holding that "the BIA did not reversibly err by concluding … that the IJ did not have the opportunity to make the underlying findings of fact that are necessary to [the BIA's] analysis" (internal quotation marks omitted)).

**B.      The BIA did not err in denying Cruz-Diaz's motion to reopen.**

Cruz-Diaz argues that the BIA erred in denying her motion to reopen, which was based on a claim of ineffective assistance of counsel. Although we generally review for

6

abuse of discretion the BIA's denial of a motion to reopen, we review de novo its determination of any procedural due process claims underlying a motion to reopen, including claims of ineffective assistance of counsel. *Fadiga v. Att'y Gen.*, 488 F.3d 142, 153-54 (3d Cir. 2007).

A proper claim of ineffective assistance of counsel must meet the procedural requirements outlined in *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988). *See Rranci v. Att'y Gen.*, 540 F.3d 165, 172 (3d Cir. 2008).[2] Specifically, an alien must first submit an affidavit setting forth the relevant facts, including the agreement with counsel about the scope of representation; second, the alien must inform counsel of the allegations and allow counsel an opportunity to respond; and third, the alien must state whether a complaint has been filed with the appropriate bar authorities, and if not, why not. *Lu v. Att'y Gen.*, 259 F.3d 127, 132 (3d Cir. 2001) (citing *Lozada*, 19 I. & N. Dec. at 639).

Regarding the third prong, we have previously stressed that the failure to file a complaint with the bar authorities "is *not* fatal if a petitioner provides a reasonable explanation for his or her decision." *Lu*, 259 F.3d at 134. For example, we excused a petitioner's failure to file a bar complaint when the petitioner's counsel "acknowledged

---

[2] A claim of ineffective assistance of counsel must additionally meet certain substantive requirements. *Contreras v. Att'y Gen.*, 665 F.3d 578, 584-85 (3d Cir. 2012). Specifically, the alien must show that "competent counsel would have acted otherwise" and that "[former] counsel's poor performance prejudiced the alien." *Id.* at 584 (citation omitted). The government argues that Cruz-Diaz has not made either showing. Because we agree with the BIA's determination that Cruz-Diaz's claim failed to satisfy the procedural requirements, we need not address whether her claim meets the substantive requirements.

[his] ineffectiveness and made every effort to remedy the situation." *Fadiga*, 488 F.3d at 157. Other jurisdictions have excused bar complaints when the alien believed that his attorney had already been suspended from the practice of law, *Esposito v. I.N.S.*, 987 F.2d 108, 111 (2d Cir. 1993), or when the fully developed evidentiary record "show[ed] a clear and obvious case of ineffective assistance of counsel," *Castillo-Perez v. I.N.S.*, 212 F.3d 518, 526 (9th Cir. 2000). On the other hand, we agreed with the BIA's rejection of the excuse that an alien's counsel was pro bono. *Lu*, 259 F.3d at 135. As a general principle, "the *Lozada* requirements need not be rigidly enforced where their purpose is fully served by other means." *Fadiga*, 488 F.3d at 156 (internal quotation marks omitted). We have explained that the purposes of *Lozada*'s third prong include deterring meritless claims of ineffective assistance of counsel, highlighting the standards which should be expected of immigration attorneys, serving the BIA's long-term interests in policing the immigration bar, increasing the BIA's confidence in the validity of a particular claim, and reducing the likelihood that an evidentiary hearing will be needed. *Lu*, 259 F.3d at 133.

Cruz-Diaz failed to comply with the procedural requirements for claiming ineffective assistance of counsel. Her claim is based on the allegation that Rafailov asserted a defectively defined PSG at her merits hearing. She submitted an affidavit explaining that she met Rafailov for the first time the day before her hearing and that he did not discuss with her any of the legal aspects of her case. Her later-retained counsel also sent a letter to Rafailov asking him to explain the legal basis for the PSG he proposed. Those actions arguably address prongs one and two of *Lozada*. But Cruz-Diaz

8

did not lodge a complaint against Rafailov with the relevant bar authorities, and her sole explanation for failing to do so – that Rafailov's colleague, Grannan, had already been disbarred – does not suffice.

Noting Grannan's disbarment does not fulfill *Lozada*'s purpose of policing the immigration bar, as the problem Cruz-Diaz is focused on is Rafailov's performance, not Grannan's. Although they worked at the same law firm, Rafailov and Grannan were individually licensed attorneys, and the failings of one are not automatically attributed to the other. Cruz-Diaz identifies no reason for treating Grannan's disciplinary record as adequate to address her complaint about Rafailov.

Reliance on Grannan's disbarment also does not fulfill the bar-complaint requirement's evidentiary purposes. There is no evidence that Grannan was disbarred for making legally defective arguments, much less the particular argument on which Cruz-Diaz's claim is now based. Thus, the bar authorities' investigation into Grannan's misconduct does not necessarily shed light on or provide evidence relevant to Cruz-Diaz's allegations against Rafailov. Grannan's disbarment fails to develop an evidentiary record of the claim against Rafailov or to increase the BIA's confidence in that claim. For those reasons, the BIA was justified in rejecting Cruz-Diaz's explanation for not filing a bar complaint against Rafailov.

## III. CONCLUSION

For the above reasons, we will deny Cruz-Diaz's petitions for review.

9